### J. B. & J. S. WYGAL v. HEIRS OF MATT. WOODLIEF ET AL.

#### No. 2884.

1. **Case Adhered to.**—The announcement made in Wygal v. Myers, *infra*, to the effect that under the probate act of 1870 a judgment of the Probate Court establishing a claim was not affected as to limitation by the probate act of 1876, which required it to be filed with the county clerk in thirty days, entered in the claim docket, and classed by the probate judge, referred to and approved.

2. **Approval of Claim Against an Estate.**—An approval of a claim against an estate made by the clerk of a District Court in vacation under the Act of May 27, 1873, when endorsed by the clerk on the account, had the effect of establishing the claim as just, and stopped the running of the statutes of limitations against it during the pendency of administration. The requirement that the approval by the clerk should have been spread on the record was directory to the officer, and its neglect could not impair the effect of the approval.

3. **Limitation.**—A claim against an estate which was allowed by the administrator in 1875, and rejected by the Probate Court in 1889 on the ground that it was barred by limitation, can not afterwards be approved in a proceeding in the District Court when the plea of limitation is interposed. The order of approval of the Probate Court was necessary to its establishment, and to place it on the basis of a judgment.

APPEAL from Wharton. Tried below before Hon. Wm. H. Burkhart. The opinion states the case.

*R. M. Brown,* and *Pearson & Ballowe,* for appellants.

*Hawes & Carpenter,* for appellees.

COLLARD, JUDGE.—This case grows out of the administration of the estate of F. G. Franks, a partial history of which is given in the statement of the case of Wygal v. Myers, decided at the present term of the court, which need not be repeated. After B. D. King was appointed administrator *de bonis non,* that is on June 1, 1888, he filed in the Probate Court an application for an order to sell 600 acres of land out of the J. C. Clark league to pay certain debts of the estate; and on the same day the heirs of Matt Woodlief, holding an unpaid judgment against the estate, formerly rendered in the District Court against the administrator Rust, also made application to sell the same land to pay their judgment. The administrator's (King's) application was to pay quite a number of debts, among which were the following:

A judgment in favor of Matt Woodlief, of date August 11, 1875, rendered in the District Court of Wharton County against Rust, the former administrator, for $1218.28 and interest.

A judgment in favor of C. R. Johns & Co., rendered by the same court against Rust, the administrator, of date December 10, 1874, for $458 and interest.

An open account in favor of W. J. Claton for $69.50, allowed Febru-

ary 15, 1875, which does not appear to have been acted on by probate authority until January 10, 1889, when it was rejected by the probate judge because it was barred by limitation.

An open account of B. Odom for $81.90, allowed by Rust, the administrator, on the 30th day of March, 1875, and approved by the district clerk of Wharton County on the same day as a claim of the sixth class.

Appellants, claiming to have bought of the heirs of Franks all their interest in the estate, appeared in answer to the applications and objected to the granting of the order to sell the land, because the claims for the payment of which the sale was asked were stale demands and barred by the statute of limitations. The County Probate Court disapproved all the claims except that of Odom, and refused to order the sale. There was an appeal to the District Court, where the four claims mentioned were approved and classified and the 600 acres of land ordered sold to pay the same. Contestant appealed.

Questions as to limitation against the two judgments and the necessity of having them filed and classified in the Probate Court have been decided adversely to appellants in the case of Wygal v. Meyers, already referred to.

As to the claim of B. Odom, it was not affected by limitation. Under the Act of 1870 (sec. 192; Pasch. Dig., art. 5660) it was provided that at each term of the court all claims which had been "allowed and filed should be examined and approved or disapproved by an order duly entered;" and in another section (197) of the same act it was provided that the order of approval of a claim had the force and effect of a judgment.

By the Act of May 27, 1873, the clerks of the District Courts were authorized to approve and disapprove claims against an estate in vacation. Odom's account was, as we have seen, then duly allowed and approved, though the order of approval by the clerk was not spread upon the record as seems to be required in the latter part of the section cited. The approval was endorsed on the account, and we think this was sufficient to establish the account as a just claim against the estate so as to stop the running of the statute of limitations during the pendency of the administration, the entry in the minutes being a clerical requirement only.

The account of Claton does not rest on the same facts. It was not approved until in 1889, in the District Court in this proceeding, after it had been declared barred by the county judge. It was not established then until after it was barred. The order of approval was necessary to establish it as a claim against the estate and to put it on a footing of a judgment. Hence we must hold that the statute of limitations pleaded to this account ought to have been sustained.

We conclude that the judgment of the court below adjudging that the judgments in favor of Woodlief and C. R. Johns & Co. and the Odom account were valid and subsisting claims against the estate and ordering the sale of the 600 acres of land should be affirmed, but reversed as to

the Claton account. It seems that Claton did not appeal from the judgment of the County Court, but the appeal was by the other three creditors and the administrator King.

Under these circumstances, and considering the fact that the judgment of the court below is in the main affirmed, we conclude that the costs of this appeal should be paid by the appellants.

*Affirmed.*

Adopted March 25, 1890.